

JUDGE ALONSO
MAGISTRATE JUDGE GILBERT

**FILED**
CAT 1
AXK
5/16/2024
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | **UNDER SEAL** |
| v. | Case No.: 23 CR 426 |

OSWALDO ESPINOSA,
    also known as "Oswaldo Espinosa
    Navarrete," "Ozzy," "Gordo,"
    "Gordito," "Yoggi," "Yogui,"
    "Scrambler," and "Cifer1 Cifer1,"
JORGE BORBON-OCHOA,
    also known as "Coordinator" and
    "Coordi,"
RICARDO TELLO,
    also known as "Ricky," "Riki," and
    "Bocho,"
RODOLFO RIZZO-RAMON,
    also known as "Blackhawk,"
ABRAHAM ARECHIGA SANTILLAN,
    also known as "Abe," "Lincoln," and
    "El Mero Perro Bravo,"
JESUS LEONEL CAMACHO-VERA,
    also known as "Leo" and "Primo,"
JOSE ISAIAS MARTINEZ,
    also known as "Tanque" and "Tanke,"
ELIEM LINARES,
    also known as "Elium," "Elien," and
    "Casapolis,"
ELVIN SHTAYNER,
PAULINA TORRES,
    also known as "Pau,"
AHMAD COLLINS,
RAUL NAVARRETE-GOMEZ,
MARTIN HERRERA-FERNANDEZ,
    also known as "Pelon,"
URIEL ARIAS CARDENAS
DAVID BERGER
GLENIS ZAPATA,
ILENIS ZAPATA, and
GEORGINA BANUELOS

Violations: Title 21, United States
Code, Sections 841(a)(1) and 846,
Title 18, United States Code, Sections
1956(a)(1)(B)(i), 1956(a)(1)(B)(ii), and
1956(h), and Title 31, United States
Code, Sections 5313 and 5324(a)

**SUPERSEDING INDICTMENT**

## COUNT ONE

The SPECIAL JANUARY 2023 GRAND JURY charges:

1.    Beginning no later than in or about 2018, and continuing until at least in or about October 2023, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO ESPINOSA,
also known as "Oswaldo Espinosa Navarrete," "Ozzy,"
"Gordo," "Gordito," "Yoggi," "Yogui," "Scrambler," and "Cifer1 Cifer1,"
JORGE BORBON-OCHOA,
also known as "Coordinator" and "Coordi,"
RICARDO TELLO,
also known as "Ricky," "Riki," and "Bocho,"
RODOLFO RIZZO-RAMON,
also known as "Blackhawk,"
ABRAHAM ARECHIGA SANTILLAN,
also known as "Abe," "Lincoln," and "El Mero Perro Bravo,"
JESUS LEONEL CAMACHO-VERA,
also known as "Leo" and "Primo,"
JOSE ISAIAS MARTINEZ,
also known as "Tanque" and "Tanke,"
ELIEM LINARES,
also known as "Elium," "Elien," and "Casapolis,"
PAULINA TORRES,
also known as "Pau,"
AHMAD COLLINS, and
MARTIN HERRERA-FERNANDEZ,
also known as "Pelon,"

defendants herein, did conspire with Sebastian Vazquez-Gamez, Sergio Blas-Hernandez, and Rodrigo Jimenez-Perez, and others known and unknown to the Grand Jury, to knowingly and intentionally possess with intent to distribute and distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

2.      It was part of the conspiracy that defendant OSWALDO ESPINOSA was the leader of an international drug trafficking organization ("the ESPINOSA DTO") that imported cocaine into the United States from Mexico, transported the cocaine to different cities and towns across the United States, delivered wholesale quantities of cocaine to distributors and customers, collected cash from the sale of the cocaine, and transferred the cash drug proceeds from the United States to Mexico for the benefit of ESPINOSA and others. In the course of the conspiracy, ESPINOSA and other members of the ESPINOSA DTO trafficked thousands of kilograms of cocaine and laundered tens of millions of dollars in drug proceeds.

3.      It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO smuggled loads of cocaine from Mexico into the United States hidden inside packages of legitimate goods transported by semi-trailer trucks. Among other things, ESPINOSA and other members of the ESPINOSA DTO hid kilograms of cocaine inside rolls of commercial plastic sheeting.

4.      It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO used various means to transport cocaine from the southern part of the United States to Chicago and other locations across the country, including by semi-trailer trucks and by private chartered airplanes such as a 1987 Bombardier CL-600 Twin Jet with tail number XA-UFF.

5.      It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO used various means to transport drug proceeds from the Midwest and elsewhere to the southern part of the United States and on into

Mexico, including via commercial flights and using the assistance of Glenis Zapata, a flight attendant with a "Known Crew Member" (KCM) badge and authority, semi-trailer trucks, and private chartered airplanes, such as a 1987 Bombardier CL-600 Twin Jet with tail number XA-UFF.

6.     It was further part of the conspiracy that to facilitate Glenis Zapata's transportation of cash drug proceeds on commercial flights, ESPINOSA and other members of the ESPINOSA DTO caused cash drug proceeds to be exchanged by bank employees, Ilenis Zapata and Georgina Banuelos, from lower denominated bills to higher denominated bills.

7.     It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO used cash drug proceeds to pay for the chartered private air travel described above in paragraphs 4 and 5, including via transactions processed by Individual A and David Berger.

8.     It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO used warehouses and commercial garages in Chicago and elsewhere to receive and unload semi-trailer trucks containing hidden loads of cocaine, as well as to collect, count, package, and load cash drug proceeds.

9.     It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO used stash locations in Chicago and elsewhere, including apartments and offices, to temporarily store kilograms of cocaine and bulk cash drug proceeds until further distribution and transfer.

10.     It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO possessed with intent to distribute large quantities of cocaine in the United States, including in the Northern District of Illinois, including but not limited to the possession of cocaine seized by law enforcement officials as described below:

    a.    On or about March 31, 2021, approximately 5 kilograms of cocaine in Chicago, Illinois.

    b.    On or about June 9, 2021, approximately 5 kilograms of cocaine in Chicago, Illinois.

    c.    On or about June 9, 2021, approximately 8 kilograms of cocaine near La Porte, Indiana.

    d.    On or about November 3, 2021, approximately 100 kilograms of cocaine in Chicago, Illinois.

    e.    On or about February 17, 2022, approximately 40 kilograms of cocaine in Homestead, Florida.

    f.    On or about March 2, 2022, approximately 308 kilograms of cocaine in Houston, Texas.

    g.    On or about March 23, 2022, approximately 118 kilograms of cocaine in Pharr, Texas.

    h.    On or about October 1, 2023, approximately 223 kilograms of cocaine in Wixom, Michigan.

11.     It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO collected, counted, and packaged in the United States, including in the Northern District of Illinois, large quantities of United States currency from the sale of cocaine, including but not limited to the currency seized by law enforcement as described below:

    a.    On or about November 26, 2019, approximately $305,230 in Hillside, Illinois.

    b.      On or about April 13, 2020, approximately $909,510 in Logansport, Indiana.

    c.      On or about November 25, 2020, approximately $400,000 in Chicago, Illinois.

    d.      On or about December 10, 2020, approximately $715,180 in Chicago, Illinois.

    e.      On or about March 24, 2021, approximately $750,250 in Linthicum Heights, Maryland.

    f.      On or about March 29, 2021, approximately $586,000 in Sumner County, Tennessee.

    g.      On or about March 30, 2021, approximately $525,767 in Indianapolis, Indiana.

    h.      On or about March 31, 2021, approximately $573,995 in Chicago, Illinois.

    i.      On or about April 19, 2021, approximately $279,910 in Arlington Heights, Illinois.

    j.      On or about April 20, 2021, approximately $1,257,011 in Chicago, Illinois.

    k.      On or about April 27, 2021, approximately $999,260 in Chicago, Illinois.

    l.      On or about June 9, 2021, approximately $32,975 in Chicago, Illinois.

    m.      On or about August 12, 2021, approximately $713,325 in Sanford, Florida.

    n.      On or about November 4, 2021, approximately $11,161 in Indianapolis, Indiana.

    o.      On or about March 18, 2022, approximately $112,500 in Aurora, Illinois.

12.    It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO maintained paper and electronic ledgers to track

cocaine quantities received and distributed, drug debts, and cash payments and transfers.

13. It was further part of the conspiracy that ESPINOSA and other members of the ESPINOSA DTO communicated with each other by means of encrypted cell phones and encrypted applications in an attempt to shield their illicit communications from law enforcement.

14. It was further part of the conspiracy that numerous individuals worked with ESPINOSA, together, and with others to support and advance the ESPINOSA DTO's drug-trafficking activities, including the following defendants:

a. JORGE BORBON-OCHOA served as the primary manager of the ESPINOSA DTO's operations. Among other things, BORBON-OCHOA coordinated the distribution of cocaine loads and the collection of bulk amounts of cash drug proceeds in the United States.

b. RICARDO TELLO served as head of a Chicago-based cell for the ESPINOSA DTO. Among other things, TELLO served as a logistics coordinator for the ESPINOSA DTO, coordinating some of the transportation within the United States of concealed loads of cocaine via semi-trailer truck. Further, TELLO received and distributed bulk cash drug proceeds.

c. RODOLFO RIZZO-RAMON served as one of ESPINOSA's key operatives who, among other things, transported and caused to be transported cocaine loads, received and transported cash drug proceeds, and delivered an encrypted cell phone to another member of the ESPINOSA DTO.

      d.    ABRAHAM ARECHIGA SANTILLAN worked as part of a Chicago-based cell for the ESPINOSA DTO, along with JESUS LEONEL CAMACHO-VERA, JOSE ISAIAS MARTINEZ, and PAULINA TORRES. Among other things, ARECHIGA-SANTILLAN oversaw the receipt and distribution of cocaine shipments and the collection of drug proceeds for the ESPINOSA DTO.

      e.    JESUS LEONEL CAMACHO-VERA worked as part of a Chicago-based cell for the ESPINOSA DTO, along with ARECHIGA SANTILLAN, MARTINEZ, and TORRES. Among other things, CAMACHO-VERA served as a stash-house operator and a drug and money courier for the ESPINOSA DTO.

      f.    JOSE ISAIAS MARTINEZ worked as part of a Chicago-based cell for the ESPINOSA DTO, along with ARECHIGA SANTILLAN, CAMACHO-VERA, and TORRES. Among other things, MARTINEZ served as a drug and money courier for the ESPINOSA DTO, and MARTINEZ continued to work for the ESPINOSA DTO after relocating to Mexico.

      g.    ELIEM LINARES served as, among other things, a drug and money courier for the ESPINOSA DTO.

      h.    PAULINA TORRES worked as part of a Chicago-based cell for the ESPINOSA DTO, along with ARECHIGA SANTILLAN, MARTINEZ, and CAMACHO-VERA. Among other things, TORRES served as a drug and money courier for the ESPINOSA DTO.

      i.    AHMAD COLLINS served as a cocaine and cash drug proceeds transporter for the ESPINOSA DTO. Among other things, COLLINS used his semi-

trailer truck to support the ESPINOSA DTO by transporting hundreds of kilograms of cocaine from Texas to the Midwest and elsewhere, and millions of dollars of cash drug proceeds from the Midwest to Texas.

        j.    MARTIN HERRERA-FERNANDEZ served as a drug and money courier for the ESPINOSA DTO as part of the cell headed by TELLO.

      15.    With respect to OSWALDO ESPINOSA, JORGE BORBON-OCHOA, RICARDO TELLO, RODOLFO RIZZO-RAMON, ABRAHAM ARECHIGA SANTILLAN, JESUS LEONEL CAMACHO-VERA, JOSE ISAIAS MARTINEZ, ELIEM LINARES, and AHMAD COLLINS, the offense involved 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance.

     All in violation of Title 21, United States Code, Section 846, and Title 18, United States Code, Section 2.

9

## COUNT TWO

The SPECIAL JANUARY 2023 GRAND JURY further charges:

1.     On or about March 31, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO ESPINOSA,
also known as "Oswaldo Espinosa Navarrete," "Ozzy,"
"Gordo," "Gordito," "Yoggi," "Yogui," "Scrambler," and "Cifer1 Cifer1,"
JORGE BORBON-OCHOA,
also known as "Coordinator" and "Coordi,"
ABRAHAM ARECHIGA SANTILLAN,
also known as "Abe," "Lincoln," and "El Mero Perro Bravo,"
JESUS LEONEL CAMACHO-VERA,
also known as "Leo" and "Primo," and
JOSE ISAIAS MARTINEZ,
also known as "Tanque" and "Tanke,"

defendants herein, did knowingly and intentionally possess with intent to distribute a controlled substance, namely, a quantity of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

2.     With respect to OSWALDO ESPINOSA, JORGE BORBON-OCHOA, ABRAHAM ARECHIGA SANTILLAN, JESUS LEONEL CAMACHO-VERA, and JOSE ISAIAS MARTINEZ, the offense involved 500 grams or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance.

## COUNTS THREE THROUGH FIVE

The SPECIAL JANUARY 2023 GRAND JURY further charges:

On or about June 9, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO ESPINOSA,
also known as "Oswaldo Espinosa Navarrete," "Ozzy,"
"Gordo," "Gordito," "Yoggi," "Yogui," "Scrambler," and "Cifer1 Cifer1,"

defendant herein, did knowingly and intentionally possess with intent to distribute a controlled substance, namely, the quantities of mixtures and substances containing a detectable amount of cocaine, a Schedule II Controlled Substance, set forth below, with each such quantity constituting a separate count:

| COUNT | LOCATION | QUANTITY OF COCAINE |
|-------|----------|---------------------|
| THREE | in a red 2021 Chrysler Pacifica with Illinois registration CT92797 in Chicago, Illinois, at approximately 2:19 p.m. | 5 kilograms or more |
| FOUR | 3300 block of West 47th Street, Chicago, Illinois | 500 grams or more |
| FIVE | 5300 block of South Kildare Avenue, Chicago, Illinois | 500 grams or more |

All in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

## COUNT SIX

The SPECIAL JANUARY 2023 GRAND JURY further charges:

On or about November 3, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO ESPINOSA,
also known as "Oswaldo Espinosa Navarrete," "Ozzy,"
"Gordo," "Gordito," "Yoggi," "Yogui," "Scrambler," and "Cifer1 Cifer1,"
RICARDO TELLO,
also known as "Ricky," "Riki," and "Bocho," and
RODOLFO RIZZO-RAMON,
also known as "Blackhawk,"

defendants herein, did knowingly and intentionally possess with intent to distribute a controlled substance, namely, 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, a Schedule II Controlled Substance;

In violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2.

12

## COUNT SEVEN

The SPECIAL JANUARY 2023 GRAND JURY further charges:

Beginning no later than in or about 2018, and continuing until in or about March 2022, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO ESPINOSA,
also known as "Oswaldo Espinosa Navarrete," "Ozzy,"
"Gordo," "Gordito," "Yoggi," "Yogui," "Scrambler," and "Cifer1 Cifer1,"
JORGE BORBON-OCHOA,
also known as "Coordinator" and "Coordi,"
RICARDO TELLO,
also known as "Ricky," "Riki," and "Bocho,"
RODOLFO RIZZO-RAMON,
also known as "Blackhawk,"
ABRAHAM ARECHIGA SANTILLAN,
also known as "Abe," "Lincoln," and "El Mero Perro Bravo,"
JESUS LEONEL CAMACHO-VERA,
also known as "Leo" and "Primo,"
JOSE ISAIAS MARTINEZ,
also known as "Tanque" and "Tanke,"
ELIEM LINARES,
also known as "Elium," "Elien," and "Casapolis,"
ELVIN SHTAYNER,
PAULINA TORRES,
also known as "Pau,"
AHMAD COLLINS,
RAUL NAVARRETE-GOMEZ,
MARTIN HERRERA-FERNANDEZ,
also known as "Pelon,"
URIEL ARIAS CARDENAS,
GLENIS ZAPATA,
ILENIS ZAPATA, and
GEORGINA BANUELOS,

defendants herein, did knowingly conspire with each other, and with persons known and unknown to the Grand Jury, to commit offenses in violation of Title 18, United States Code, Section 1956, namely:

(a)     to knowingly conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

(b)     to knowingly conduct a financial transaction affecting interstate and foreign commerce, namely, the exchange of United States currency at a financial institution, which involved the proceeds of a specified unlawful activity, that is, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under Federal law and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii);

(c)     to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States, knowing that the monetary instrument and funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity

14

and knowing that such transportation, transmission, and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

(d) to knowingly engage in a monetary transaction in and affecting interstate commerce in criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, namely, the felonious buying and selling and otherwise dealing in a controlled substance, in violation of Title 18, United States Code, Section 1957;

In violation of Title 18, United States Code, Sections 1956(h) and 2.

## COUNT EIGHT

The SPECIAL JANUARY 2023 GRAND JURY further charges:

On or about March 16, 2022, at Elgin, in the Northern District of Illinois, Eastern Division, and elsewhere,

OSWALDO ESPINOSA,
also known as "Oswaldo Espinosa Navarrete," "Ozzy,"
"Gordo," "Gordito," "Yoggi," "Yogui," "Scrambler," and "Cifer1 Cifer1," and
URIEL ARIAS CARDENAS,

defendants herein, did knowingly conduct a financial transaction affecting interstate commerce, namely, the transfer and delivery of approximately $150,000 in United States currency, which involved the proceeds of a specified unlawful activity, that is, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control, of the proceeds of said specified unlawful activity and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity;

In violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 2.

## COUNT NINE

The SPECIAL JANUARY 2023 GRAND JURY further charges:

1.      At times material to this indictment:

        a.      Title 31, United States Code, Section 5313(a) and Title 31, Code of Federal Regulations, Section 1010.310-313 required domestic financial institutions to prepare and file with the Financial Crimes Enforcement Network a Currency Transaction Report (Form 104) for any transaction or series of transactions involving currency of more than $10,000.

        b.      J.P. Morgan Chase was a domestic financial institution subject to the Currency Transaction Reporting requirements described in the preceding paragraph.

        c.      Bank Account 1 was a J.P. Morgan Chase personal checking account (ending 9154) in the name of DAVID BERGER.

        d.      Bank Account 2 was a J.P. Morgan Chase business checking account (ending 2992) on which DAVID BERGER was a signor.

2.      Beginning in or about December 2020, and continuing until on or about May 29, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID BERGER,

defendant herein, knowingly and for the purpose of evading the reporting requirements of Title 31, United States Code, Section 5313(a) and regulations prescribed thereunder, structured transactions at J.P. Morgan Chase by depositing

17

United States currency in amounts under $10,000.01 into Bank Account 1 and Bank Account 2 in separate transactions on at least approximately 21 occasions, and did so as part of a pattern of any illegal activity involving more than $100,000 in a 12-month period;

In violation of Title 31, United States Code, Section 5324(a)(3).

## COUNT TEN

The SPECIAL JANUARY 2023 GRAND JURY further charges:

On or about December 17, 2020, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID BERGER,

defendant herein, did knowingly conduct a financial transaction affecting interstate commerce, namely, the deposit of $13,760 in United States currency at J.P. Morgan Chase, a financial institution, in increments of $3,980, $3,980, $3,800, and $2,000, which involved the proceeds of a specified unlawful activity, that is, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under Federal law, and that while conducting such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity;

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

## COUNT ELEVEN

The SPECIAL JANUARY 2023 GRAND JURY further charges:

On or about January 13, 2021, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID BERGER,

defendant herein, did knowingly conduct a financial transaction affecting interstate commerce, namely, the deposit of $14,835 in United States currency at J.P. Morgan Chase, a financial institution, in increments of $2,660, $2,160, $8,750, $780, and $485, which involved the proceeds of a specified unlawful activity, that is, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under Federal law, and that while conducting such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity;

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

## COUNTS TWELVE THROUGH THIRTEEN

The SPECIAL JANUARY 2023 GRAND JURY further charges:

On or about the dates below, in the Northern District of Illinois, Eastern Division, and elsewhere,

GLENIS ZAPATA,

defendant herein, did knowingly conduct a financial transaction affecting interstate and foreign commerce, namely, the transfer and delivery of the United States currency set forth below, which involved the proceeds of a specified unlawful activity, that is, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to conceal and disguise, the nature, location, source, ownership, and control, of the proceeds of said specified unlawful activity and that while conducting such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, with each financial transaction below constituting a separate count:

| COUNT | DATE | UNITED STATES CURRENCY |
|---|---|---|
| TWELVE | August 7, 2019 | Approximately $170,000 |
| THIRTEEN | September 10, 2019 | At least approximately $140,000 |

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## COUNTS FOURTEEN THROUGH SIXTEEN

The SPECIAL JANUARY 2023 GRAND JURY further charges:

On or about the dates below, at Chicago, in the Northern District of Illinois, Eastern Division, and elsewhere,

ILENIS ZAPATA and
GEORGINA BANUELOS,

defendants herein, did knowingly conduct a financial transaction affecting interstate commerce, namely, the exchange of the United States currency set forth below, which involved the proceeds of a specified unlawful activity, that is, the felonious buying and selling and otherwise dealing in a controlled substance, knowing that the transaction was designed in whole and in part to avoid a transaction reporting requirement under Federal law, and that while conducting such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, with each financial transaction below constituting a separate count:

| COUNT | DATE | UNITED STATES CURRENCY |
|---|---|---|
| FOURTEEN | July 9, 2019 | Approximately $150,000 |
| FIFTEEN | August 6, 2019 | Approximately $100,000 |
| SIXTEEN | October 24, 2019 | Approximately $150,000 |

In violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii).

## COUNTS SEVENTEEN THROUGH NINETEEN

The SPECIAL JANUARY 2023 GRAND JURY further charges:

1.     At times material to this indictment:

a.     Financial Institution 1 was a bank with branches in Indiana, including a branch on Creasy Lane in Lafayette ("the Creasy Lane branch").

b.     ILENIS ZAPATA and GEORGINA BANUELOS were employees of Financial Institution 1 working at the Creasy Lane branch.

c.     Financial Institution 1 constituted a financial institution as defined in Title 31, Code of Federal Regulations, Section 1010.100(t).

d.     Financial Institution 1 was a customer of the Federal Reserve Bank of Chicago. As a result, the Creasy Lane branch of Financial Institution 1 could buy—via another branch of Financial Institution 1—United States currency from the Federal Reserve Bank of Chicago, which cash was transported from the Northern District of Illinois and ultimately to the Creasy Lane branch.

2.     On or about the dates set forth below, at Chicago, in the Northern District of Illinois, and elsewhere,

ILENIS ZAPATA and
GEORGINA BANUELOS,

defendants herein, did knowingly and willfully fail to file a Currency Transaction Report, FinCEN Form 104, required by Section 5313(a) of Title 31, United States Code, and the regulations promulgated thereunder, Title 31, Code of Federal Regulations, Sections 1010.311 and 1010.313, in relation to the exchange of United States currency set forth below, and did so while violating another law of the United

23

States and as part of a pattern of illegal activity involving more than $100,000 in a

12-month period, each failure to file constituting a separate count:

| COUNT | DATE | UNITED STATES CURRENCY |
|---|---|---|
| SEVENTEEN | July 9, 2019 | Approximately $150,000 |
| EIGHTEEN | August 6, 2019 | Approximately $100,000 |
| NINETEEN | October 24, 2019 | Approximately $150,000 |

In violation of Title 31, United States Code, Sections 5313 and 5322(b), Title

31, Code of Federal Regulations, Sections 1010.100(t), 1010.311 and 1010.313, and

Title 18, United States Code, Section 2.

## **FORFEITURE ALLEGATION**

The SPECIAL JANUARY 2023 GRAND JURY further alleges:

1.      Upon conviction of an offense in violation of Title 21, United States Code, Section 841(a)(1) or 846, as set forth in this indictment, defendants shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained, directly and indirectly, as a result of the offense; and any property used, and intended to be used, in any manner and part, to commit and to facilitate commission of the offense, as provided in Title 21, United States Code, Section 853(a).

2.      In addition, upon conviction of an offense in violation of Title 18, United States Code, Section 1956, as set forth in this indictment, defendants shall forfeit to the United States of America, any property involved in such offense, and any property traceable to such property, as provided in Title 18, United States Code, Section 982(a)(1).

3.      In addition, upon conviction of an offense in violation of Title 31, United States Code, Sections 5313 or 5324, as set forth in this indictment, defendants shall forfeit to the United States of America, any property involved in the offense and any property traceable thereto, as provided in Title 31, United States Code, Section 5317(c).

4.      The property to be forfeited includes, but is not limited to, the following specific property:

a.      a 2019 Nissan Sentra (VIN 3N1AB7AP5KY430945) seized on or about July 14, 2022.

5.      If any of the property described above, as a result of any act or omission by a defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States, Code Section 853(p), and Title 18, United States Code, Section 982(b).

A TRUE BILL:

_____
FOREPERSON

_____
Signed by Erika L. Csicsila on behalf of the
ACTING UNITED STATES ATTORNEY